IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 25-cv-03501-PAB-NRN

DR. ANNE BRAUWEILER,

Plaintiff,

v.

THE UNIVERSITY OF COLORADO,

Defendant.

---

**ORDER**

---

This matter is before the Court on Defendant's Motion to Dismiss First Amended Complaint [Docket No. 10]. Plaintiff has filed a response, Docket No. 17, and defendant has filed a reply. Docket No. 21.

## I. BACKGROUND[1]

Dr. Anne Brauweiler began working for defendant University of Colorado (the "University") in the laboratory of Dr. Brent Palmer on October 1, 2022. Docket No. 6 at 4, ¶ 28. Dr. Brauweiler is a Ph.D. research assistant with over 25 years of post-doctoral experience. *Id.* at 3-4, ¶¶ 14, 22. Dr. Brauweiler alleges that, during her time working with Dr. Palmer at the University, she experienced abusive and hostile treatment based on her gender. *Id.* at 10, 17-19, ¶¶ 91, 168, 176, 180, 187-88.

[1] The facts below are taken from plaintiff's amended complaint ("complaint"), Docket No. 6, and are presumed to be true, unless otherwise noted, for purposes of ruling on defendant's motion to dismiss.

On January 26, 2024, Dr. Palmer told Dr. Brauweiler that if she did not resign from her employment, he would seek to remove her from the laboratory. *Id.* at 13, ¶ 126. On January 30, 2024, Dr. Palmer urged Dr. Brauweiler to resign, and after Dr. Brauweiler said she was retaining her position of employment, Dr. Palmer proceeded to give her a performance review with the lowest score. *Id.* at 13-14, ¶¶ 130-33. On February 5, 2024, Dr. Brauweiler sent an email rebutting the information in the performance review and received an automatic reply stating that Dr. Palmer was out of the office. *Id.* at 14, ¶¶ 139-40. Later that evening, Dr. Palmer sent Dr. Brauweiler an email that attached a letter (the "Letter"). *Id.*, ¶ 142. The Letter, dated February 5, 2024, stated that Dr. Palmer had decided to terminate Dr. Brauweiler's employment. Docket No. 10-1 at 1.[2] It stated that Dr. Brauweiler was an "at-will" employee, allowing for termination at any time. *Id.* The Letter notes that, "[u]pon the concurrence of the Dean of Medicine of the University of Colorado Anschutz Medical Campus [(the "Dean")], [Dr. Brauweiler's] appointment will end on . . . February 16th 2024." *Id.* The Dean's concurrence was needed to terminate plaintiff's employment and the Dean's concurrence had not been obtained as of February 5, 2024. Docket No. 6 at 15, ¶ 149.

---

[2] "[I]n assessing whether a plaintiff has stated a claim for relief, a court must restrict its review to only the 'allegations within the four corners of the complaint,' and cannot consider other pleadings or external allegations." *Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025) (quoting *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1286 n.1 (10th Cir. 2019)). However, a court "may also consider documents that a plaintiff (1) attaches to her complaint; (2) incorporates by reference in her complaint; or (3) refers to in her complaint and that are central to her complaint and indisputably authentic." *Cuervo v. Sorenson*, 112 F.4th 1307, 1312 (10th Cir. 2024). Here, the Letter is referenced in the complaint, Docket No. 6 at 14, ¶ 142, the Letter is central to plaintiff's claim, and no party disputes its authenticity. Accordingly, the Court may consider the Letter in ruling on the motion to dismiss.

University policy required that HR or the University's legal department conduct a review before Dr. Brauweiler could be terminated.[3] *Id.*, ¶ 150. The Letter was not co-signed by HR or any other University authority. *Id.*, ¶ 151. Dr. Brauweiler did not receive any written communication from HR regarding the termination prior to February 16, 2024.[4] *Id.* at 16, ¶ 155. HR has a history of opposing personnel decisions proposed by Dr. Palmer. *Id.*, ¶ 153.

Dr. Brauweiler's last day working for the University was February 16, 2024. *Id.*, ¶ 156. The University was required by its own policy and by law to give Dr. Brauweiler a final paycheck on the day of her termination, but Dr. Brauweiler did not receive a final paycheck until March 1, 2024. *Id.*, ¶¶ 157, 161. Dr. Brauweiler did not receive unequivocal notice of the termination decision from the University until February 21, 2024. *Id.*, ¶ 160.

Following her termination, Dr. Brauweiler continued to work for Dr. Palmer without pay for hundreds of hours summarizing and analyzing her research results. *Id.* at 17, ¶¶ 169-70. In September 2024, Dr. Palmer emailed Dr. Brauweiler saying that he wanted to publish her research data and she responded affirmatively. *Id.* at 18, ¶¶ 174-75. When the article was published in November 2024, "Dr. Palmer [had] omitted Dr. Brauweiler as an author," and denied her credit for her research contributions. *Id.*, ¶¶ 177-80.

---

[3] Dr. Brauweiler attaches the University policy to her response to the motion to dismiss. *See* Docket No. 17-1. The University argues that the Court cannot properly consider it when ruling on the motion to dismiss. Docket No. 21 at 3-4. Because the Court does not need to review the University policy to resolve the motion to dismiss, it will not consider it.

[4] Dr. Brauweiler does not specify whether she received any written communication from HR on February 16, 2024 or, if so, what that communication was.

Dr. Brauweiler subsequently filed charges of discrimination on December 12, 2024 with both the Colorado Civil Rights Division ("CCRD") and the Equal Employment Opportunity Commission ("EEOC"). *Id.* at 2, ¶ 4. Dr. Brauweiler filed this case under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII") on November 3, 2025, Docket No. 1, and filed her amended complaint on January 4, 2026. Docket No. 6. Dr. Brauweiler brings one claim for relief: gender-based discrimination in violation of Title VII. *Id.* at 19-21, ¶¶ 186-91. Dr. Brauweiler states that she brings her claim for relief based on "at least ten (10) separate adverse actions of a discriminatory nature," including her termination. *Id.*, ¶ 188.

On January 20, 2026, the University filed its motion to dismiss, arguing that Dr. Brauweiler failed to timely exhaust administrative remedies regarding her termination.[5] Docket No. 10. On February 13, 2026, Dr. Brauweiler filed a response, Docket No. 17, and on February 26, 2026, the University filed a reply. Docket No. 21.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

---

[5] The University does not specify under which rule it moves for dismissal. *See generally* Docket No. 10. "When a motion to dismiss alleges that the plaintiff asserting employment discrimination claims failed to exhaust administrative remedies in a timely manner, the motion is appropriately analyzed under Rule 12(b)(6)." *Anderson v. AHS Hillcrest Med. Ctr., LLC*, 2020 WL 1325353, at *2 (N.D. Okla. Mar. 20, 2020) (citation omitted); *see also Douglas v. Norton*, 167 F. App'x 698, 704-05 (10th Cir. 2006) (unpublished) (finding that the district court erred in analyzing a claim that a plaintiff failed to timely exhaust administrative remedies under Rule 12(b)(1) instead of Rule 12(b)(6)). Therefore, the Court treats the motion to dismiss as a Rule 12(b)(6) motion.

(2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). A court, however, does not need to accept conclusory allegations. *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("[W]e are not bound by conclusory allegations, unwarranted inferences, or legal conclusions.").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

## III. ANALYSIS

To bring a Title VII claim against an employer, an employee must submit a charge of discrimination to the EEOC "within [300] days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002). "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice,'" which accrues separately. *Morgan*, 536 U.S. at 114. The University argues that Dr. Brauweiler failed to timely exhaust administrative remedies because she was terminated more than 300 days before Dr. Brauweiler filed a charge of discrimination.[6] Docket No. 10 at 2.

Specifically, the University asserts that the 300 days should accrue beginning on either January 26, 2024, when Dr. Palmer told Dr. Brauweiler he would seek to remove her from his laboratory if she did not resign or, alternatively, on February 5, 2024, when Dr. Brauweiler received the Letter. *Id.* It is unclear whether Dr. Brauweiler asserts that the 300 days should accrue beginning on February 16, 2024 or February 21, 2024. *See* Docket No. 17 at 2 (stating that Dr. Brauweiler was informed that her termination was final on February 16, 2024); *id.* at 8 (stating that Dr. Brauweiler did not receive notice of her termination until February 21, 2024). Dr. Brauweiler filed her charge of

---

[6] Dr. Brauweiler alleges that portions of her claim were timely exhausted even if she was terminated more than 300 days before she filed a charge of discrimination; she alleges that she was replaced after her termination by two less-qualified male scientists, that her research was published without giving her credit, and that her positive performance review was removed from her employment file. Docket No. 17 at 12-13. The Court need not address this issue because it finds that, at this stage of the proceedings, Dr. Brauweiler has alleged that she was terminated within 300 days of filing her charge of discrimination. However, as noted by the University, it is unclear why these allegations constitute separate Title VII violations when it does not appear that Dr. Brauweiler was employed by the University at the time.

discrimination with the EEOC on December 12, 2024, exactly 300 days after February 16, 2024. Docket No. 6 at 2, ¶ 4. Therefore, Dr. Brauweiler timely filed her charge of discrimination if the 300 days accrued on February 16, 2024 or later, but did not timely file her charge of discrimination if the 300 days accrued before February 16, 2024.

The leading case on accrual under Title VII is *Delaware State Coll. v. Ricks*, 449 U.S. 250 (1980). In *Ricks*, 449 U.S. at 252, a college's tenure committee recommended that the plaintiff not receive a tenured position in February 1973. The Board of Trustees formally voted to deny tenure on March 13, 1974. *Id.* The plaintiff immediately filed a grievance. *Id.* On June 26, 1974, the plaintiff was offered a 1-year "terminal" contract that would expire on June 30, 1975, which the plaintiff signed on September 4, 1974. *Id.* at 253-54. The plaintiff's grievance was denied on September 12, 1974. *Id.* The district court held that the limitations period for the plaintiff to file a charge of discrimination with the EEOC accrued beginning on June 26, 1974, when the plaintiff was offered the 1-year "terminal" contract. *Id.* at 254-55. The Third Circuit reversed, finding that the limitations period accrued beginning on June 30, 1975, when the plaintiff's employment was terminated. *Id.* at 255-56. The Supreme Court granted certiorari. *Id.* at 256.

The Supreme Court held that the discriminatory action in question was the denial of tenure and the limitations period accrued based on that action, regardless of whether the effects of the denial of tenure were not felt until later, noting that "the proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful." *Id.* at 258 (citation and alteration omitted). Therefore, the Court held that "the limitations periods commenced to run

when the tenure decision was made and [plaintiff] was notified. *Id.* at 259. The Court then went on to identify the precise date from which the limitations period commenced. *Id.* at 259-262. The Court rejected the contention that the limitations period commenced on September 12, 1974, the date the grievance was denied, noting that a grievance is a remedy for a prior decision, not an opportunity to influence a decision before it is made. *Id.* at 261. Instead, the Court found that the limitations period commenced on June 12, 1974, noting that the tenure committee notified the plaintiff on that date that it had "formally rejected [plaintiff's] tenure bid" and characterized its decision as an "official position." *Id.* The Court noted that, "[b]y June 26, the tenure committee had twice recommended that [plaintiff] not receive tenure; the Faculty Senate had voted to support the tenure committee's recommendation; and the Board of Trustees formally had voted to deny [plaintiff's] tenure. In light of this unbroken array of negative decisions, the District Court was justified in concluding that the College had established its official position—and made that position apparent to [plaintiff]—no later than June 26, 1974." *Id.* at 261-62 (footnote omitted).

The Court has not found a Tenth Circuit case discussing when a termination notice is sufficiently definite to start the accrual period. Other circuits interpreting *Ricks* have emphasized its holding that a notice of termination must convey the official position of the employer in order for the limitations period to commence. *See Smith v. United Parcel Serv. of Am., Inc.*, 65 F.3d 266, 268 (2d Cir. 1995) ("for the notice to be effective, it must be made apparent to the employee that the notice states the 'official position' of the employer.") (citation omitted); *Eng. v. Whitfield*, 858 F.2d 957, 961 (4th Cir. 1988) ("the *Ricks-Chardon* rule is premised on an employee's having been given

final and unequivocal notice of an employment decision having delayed consequences. Only upon receipt of such notice does the filing period begin to run. Until that time, there is the possibility that the discriminatory decision itself will be revoked, and the contemplated action not taken, thereby preserving the pre-decision status quo."); *Mull v. ARCO Durethene Plastics, Inc.*, 784 F.2d 284, 288 (7th Cir. 1986) ("under *Ricks* and its progeny unequivocal notice of termination is all that is required to start the limitations period running.") (citations omitted).

The University argues that, under *Ricks*, Dr. Brauweiler had notice of her termination on either January 26, 2024 or February 5, 2024, and therefore it is irrelevant that she was not actually terminated until a later date. Docket No. 10 at 4-5. Dr. Brauweiler, on the other hand, argues that neither the January 26, 2024 communication nor the February 5, 2024 Letter represent final, unequivocal notice of the University's official decision to terminate her. Docket No. 17 at 7-10.

The January 26, 2024 conversation between Dr. Palmer and Dr. Brauweiler, Docket No. 6 at 13, ¶ 126, only indicated that, if plaintiff did not resign, Dr. Palmer "would seek" to remove her. It therefore did not communicate a final decision of termination. The Court will next examine the Letter. The Letter is dated February 5, 2024. It begins by referencing discussions with plaintiff on November 16, 2023 and January 30, 2024 "concerning your job performance." Docket No. 10-1 at 1. It then states in the first paragraph that "I have decided to terminate your appointment as Research Services Principal Professional in the Division of Allergy & Clinical Immunology." *Id.* The second paragraph indicates that her position is "at-will," which "allows the termination of your position at any time." *Id.* The next sentence states that,

"[u]pon the concurrence of the Dean of the School of Medicine of the University of Colorado Anschutz Medical Campus, your appointment will end on () February 16th 2024." *Id.* The last two paragraphs provide information in the event Dr. Brauweiler has questions about insurance, retirement benefits, or "unemployment compensation as a result of this action." *Id.*

The first paragraph of the Letter is clear: Dr. Palmer has decided to terminate Dr. Brauweiler. The last two paragraphs are consistent with Dr. Brauweiler having been terminated. Dr. Palmer refers to retirement benefits and unemployment compensation "as a result of this action." *Id.* The second paragraph, however, is not so clear. The first sentence of that paragraph notes that Dr. Brauweiler is an "at-will" employee whose position can be terminated "at any time." *Id.* The second paragraph states that her appointment will end on February 16, 2024, but will do so "[u]pon the concurrence of the Dean of the School of Medicine." *Id.* Dr. Brauweiler claims that the need for the concurrence of the Dean means that the letter did not notify her of the final decision of the University to terminate her. Docket No. 17 at 5. The University argues that the availability of grievance procedures, appeals, or some other collateral review of the challenged decision does not toll the running of the limitations period. Docket No. 10 at 5 (citing *Ricks*, 449 U.S. at 261). The Court agrees with Dr. Brauweiler. The Letter states that, because plaintiff is an at-will employee, she can be terminated at any time. If the letter simply indicated that her last day was February 16, 2024, the limitations period would start to run. But the Letter says that her job "will end on () February 16th 2024" upon the "concurrence of the Dean of the School of Medicine." Docket No. 10-1 at 1. *Ricks* makes a distinction between a procedure that, "by its nature, is a *remedy* for

a prior decision, not an opportunity to *influence* that decision before it is made." 449 U.S. at 261. Here, by the plain language of the Letter, the Dean does not have veto power over a decision that has already been made. Rather, the Dean must concur in a decision that has yet to be made. In other words, the Dean must join with Dr. Palmer in the decision to terminate plaintiff.[7] The Letter does not indicate that the Dean has done so. Thus, Dr. Palmer's February 5, 2024 Letter did not give Dr. Brauweiler notice of the University's final decision to terminate her and did not start the accrual period.

The complaint alleges that Dr. Brauweiler did not receive notice of her termination from the University until February 21, 2024. Docket No. 6 at 16, ¶ 160. However, in her response to the motion to dismiss, Dr. Brauweiler states that, on February 16, 2024, she learned that the University considered her termination to be final. Docket No. 17 at 2. Regardless of whether Dr. Brauweiler received notice of the University's final termination decision on February 16, 2024 or February 21, 2024, her December 12, 2024 discrimination charge was timely. Accordingly, the Court finds that the amended complaint plausibly alleges that Dr. Brauweiler exhausted administrative remedies.

---

[7] Discovery may show that the Dean did not need to concur with the termination decision, but rather only the termination date. But at this point in the proceedings, the Court finds that, in the light most favorable to the plaintiff, a plausible interpretation of the Letter is that it did not indicate that a final decision had been made to terminate her and, as a result, the limitations period did not accrue on February 5, 2024. The complaint alleges that the concurrence of the Dean was needed to terminate Dr. Brauweiler. Docket No. 6 at 15, ¶ 149. The Court must accept this well-pleaded allegation as true when ruling on a 12(b)(6) motion. *United States ex rel. Heron v. Nationstar Mortg., LLC*, 2024 WL 3770843 (10th Cir. Aug. 13, 2024) (citation omitted).

## IV. CONCLUSION

Therefore, it is

**ORDERED** that Defendant's Motion to Dismiss First Amended Complaint [Docket No. 10] is **DENIED**.

DATED September 21, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge